IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WATT CARROLL, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil No. 3:04-CV-2640-H |
| | * |
| CITY OF DALLAS, TEXAS, | * |
| | * |
| Defendant. | * |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant City of Dallas's Motion for Summary Judgment, and supporting brief and appendix, filed October 11, 2005; Plaintiff's Response, and supporting brief, filed November 10, 2005; Defendant's Reply, filed November 28, 2005; and Defendant City of Dallas's Motion to Strike Plaintiff's Summary Judgment Response and Evidence, filed November 28, 2005.

I.  BACKGROUND

Plaintiff Watt Carroll is an African-American police officer in the Dallas Police Department. He alleges that he has been subjected to racial discrimination and a racially hostile work environment by his Caucasian fellow police officers and superiors. In his First Amended Complaint, filed February 7, 2005, he asserts the following causes of action: (1) Title VII race discrimination (*see* 42 U.S.C. § 2000e-2(a), 2000e-5) ["Title VII"]; (2) Title VII retaliation; (3) Section 1983 equal protection (*see* 42 U.S.C. § 1983) ["Section 1983"]; (4) Section 1981 race discrimination (*see* 42 U.S.C. § 1981) ["Section 1981"]; (5) Title VII hostile work environment; (6) violation of due process (*see* U.S. Const., Amend. V, XIV); and declaratory judgment (*see* 28 U.S.C. § 2201).

In the present motion, Defendant City of Dallas asks for summary judgment on all of those claims. For the reasons that follow, the motion is granted.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. FED. R. CIV. P. 56; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Innovative Database Systs. v. Morales*, 990 F.2d 217 (5th Cir. 1993). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that demonstrate the absence of a genuine issue of material fact, but "is not required to negate elements of the nonmoving party's case." *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant does meet its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings unsupported by specific facts presented in affidavits opposing the motion for summary judgment. FED. R. CIV. P. 56(e); *Lujan*, 497 U.S. at 888; *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir. 1995).

In determining whether genuine issues of fact exist, factual controversies are construed in the light most favorable to the nonmovant, but "only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625; *see also Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451 (1992). In the absence of any proof, the Court will not assume that the nonmoving party could or would prove the necessary facts. *Lynch*, 140 F.3d at 625. A party must do more than show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

With this summary judgment standard in mind, the Court turns to an analysis of the motion at issue.

III. ANALYSIS

As a threshold matter, the Court notes that Plaintiff's response to the motion for summary judgment is lacking in appropriate citation to evidentiary support. The response brief names various accompanying affidavits, some of which inexplicably involve events wholly unrelated to the present case. Plaintiff proceeds to invite the Court to forage for its own evidence as "the declarations themselves are the best source of the Plaintiff's factual presentation." Plf's Resp. at 1. Plaintiff's Response can be described charitably as a collection of bald allegations with occasional non-specific reference to string-cites of the 67-page Appendix, much of which is, as Defendant correctly argues, either irrelevant or otherwise inadmissible.

This Court has no duty to sift through the record in search of competent evidence supporting Plaintiff's claims. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak*

*v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). Under the circumstances, the Court would be justified in holding summarily that Plaintiff has not met his burden to adduce admissible evidence establishing a genuine issue of material fact. *See Matsushita Elec. Indus Co.*, 475 U.S. at 585-86. In the interest of justice, however, the Court has reviewed the record for probative evidence with which to analyze Plaintiff's claims.

### A. Title VII Race Discrimination

Plaintiff's cause of action for Title VII race discrimination is based on a theory of disparate treatment. Although the familiar *McDonnell Douglas* burden-shifting analysis applies, the Court need not go further than the first of the three phases -- Plaintiff's *prima facie* case -- to determine that summary judgment is warranted. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir. 1988). To state a *prima facie* case of discrimination, Plaintiff must show the following: (1) that he is a member of a protected group; (2) that he was qualified for his position; (3) that despite his qualifications he suffered an adverse employment action; and (4) that similarly situated nonmembers of the protected group were treated more favorably. *Abarca v. Metropolitan Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005). Plaintiff fails to meet each of the final two criteria.

#### 1. Adverse Employment Action

In the Fifth Circuit, an "adverse employment action" for purposes of a Title VII discrimination claim is defined as an ultimate employment decision.[1] *Felton v. Polles*, 315 F.3d 470,

---

[1] For this proposition, Defendant cites Title VII cases involving retaliation instead of the disparate treatment claim at issue here. *E.g.*, *Zaffuto v. City of Hammond*, 308 F.3d 485, 493 (5th Cir. 2002). A question has been raised in this Circuit whether disparate treatment cases should require a different, more inclusive standard to define an adverse employment action more broadly. *See, e.g.*, *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 406-07 (5th Cir.

486 (5th Cir. 2002); *see Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) ("Title VII was designed to address ultimate employment decisions, not to address every decision made by employers . . .."). Ultimate employment decisions are acts such as hiring, discharging, granting leave, promoting, and compensating. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997). In this case, it is undisputed that Plaintiff received a favorable job posting to the Interactive Community Policing "ICP" Unit in the Northwest Operations Division of the Dallas Police Department, and that he is employed there still. No demotion, discharge, or failure to promote is at issue. Although Plaintiff alleges a variety of acts he characterizes as discriminatory, only two are colorable as adverse employment actions: (1) denial of 30 minutes of overtime compensation on two occasions; and (2) a two-day suspension without pay.

Plaintiff asserts that on October 24, 2003, and November 14, 2003, he was denied overtime pay for appearances at city court in the line of duty. Taking these accusations as true, the Court finds them insufficient to support a Title VII cause of action for two reasons. First, the events are isolated in occurrence and have a negligible impact on Plaintiff's employment. *See Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000) (holding denial of overtime on one occasion not to be an adverse employment action for purposes of Title VII). Second, the events occurred more than 300 days prior to Plaintiff's September 14, 2004, filing of his charge of discrimination with the EEOC, and thus cannot independently support his claim. *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir.

---

1999); *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 878-79 (5th Cir. 1999). However, in the most recent disparate treatment cases (some of which, admittedly, are unpublished), the Circuit and its district courts have uniformly applied the stricter standard, which the Court employs here. *E.g.*, *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *Reed v. Potter*, 2005 WL 3307526, *5 (S.D. Tex. 2005). Plaintiff has neither briefed nor raised the issue of which standard should apply.

1989); *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989); 42 U.S.C. § 2000e-5(e)(1).

The two-day suspension without pay is an event of more significance. On June 30, 2004, an internal investigation found Plaintiff guilty of "glaring" at and otherwise intimidating witnesses at the felony criminal trial of his step-son. The investigation found that he had inappropriately misrepresented himself to the prosecuting attorney as a police officer on the case, rather than as a family member of the accused. Finally, the investigation determined that he had been at the courthouse in violation of the terms of an administrative leave that required him to remain at home. Plaintiff was ultimately disciplined for violating the administrative order and for conduct "which adversely affects the morale or efficiency of the Department or which has a tendency to adversely affect, lower, or destroy public respect and confidence in the Department or officer." Def's Appx. at 225.

Plaintiff disputes all of the factual findings of the internal investigators, with the possible exception of nonverbally communicating his displeasure to one witness, a fellow police officer who was, according to Plaintiff, misrepresenting under oath the facts of his step-son's case. Plaintiff further argues that the investigators did not solicit or consider testimony from Plaintiff's African-American wife and his step-son's African-American lawyer; and that their testimony refuted the accusations of the Caucasian police officer and prosecuting attorney, both as to his conduct and as to the date he was present in court. The upshot of the investigation was a two-day suspension without pay, and the issue before the court is whether that penalty -- regardless whether it was fair or discriminatory -- rises to the level of an ultimate employment decision.

Other courts have answered a similar question in the negative. Under the same standard used here in the Fifth Circuit, the Eleventh Circuit looked at the actual loss of income to the plaintiff for a one-day suspension without pay, and found it to be a one-time *de minimis* amount and therefore not actionable. *See Embry v. Callahan Eye Foundation Hosp.*, 147 Fed. Appx. 819, 829 (11th Cir. 2005). The district court for the Southern District of Texas found a three-day suspension plus a plaintiff's being "written up" on several occasions and docked one day of leave not to amount to an adverse employment action, even in sum. *See United States v. Matagorda County, Texas*, 181 F. Supp. 2d 673, 681 (S.D. Tex. 2002). Here in the Northern District, then-Chief Judge Jerry Buchmeyer held that a three-day suspension is not an ultimate employment decision, though it is unclear from the facts of the case whether the suspension was with or without pay. *See McGarity v. Mary Kay Cosmetics*, 1998 WL 50460, *5 (N.D. Tex. 1998). Although the Fifth Circuit has not decided the precise issue, it has questioned in *dicta* in a Title VII retaliation case whether even a 30-day suspension would rise to the level required to find an adverse employment action to exist in a case, like this one, in which the employee was not ultimately terminated. *See Zaffuto v. City of Hammond*, 308 F.3d 485, 493 (5th Cir. 2002).

Here it is undisputed that Plaintiff's rate of compensation, benefit package, and pension were not affected by the two-day suspension. Measured against the whole of his six-year employment with the City of Dallas, the economic impact is slight. In agreement with the reasoning of the decisions cited above, the Court finds that Plaintiff's two-day suspension without pay is characterized more accurately as a discrete, interim disciplinary measure rather than as an ultimate employment decision. Accordingly, it cannot support his Title VII cause of action for disparate treatment.

2.      Similarly Situated Non-Member of Protected Class

Even if a two-day suspension could be construed *arguendo* as an adverse employment action, Plaintiff cannot avoid summary judgment on his discrimination claim on the facts of this case. To meet the fourth element of a *prima facie* case under Title VII, Plaintiff must show that a nonmember of his protected class was similarly situated and treated more favorably. *See Okoye v. University of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). In this case, a Caucasian officer named Tom Clayton testifies by affidavit that for the offense of "glaring" at a superior officer in the workplace, he was counseled and received a reprimand. For the same offense of "glaring" during his step-son's trial, Plaintiff argues, he received the two-day suspension. The Court is again not required to determine whether the investigation into Plaintiff's trial actions was fair or accurate. The sole question is whether or not the two men were similarly situated. The offense for which Clayton was disciplined was nonverbal insubordination in the workplace. The offense for which Plaintiff was disciplined was public witness intimidation and violation of administrative leave – far more serious infractions that would justify a far more serious penalty. The two officers were not similarly situated, and Plaintiff thus cannot meet his *prima facie* case. His Title VII race discrimination claims based on disparate treatment fail as a matter of law.

B.      **Sections 1981 and 1983**

Although Plaintiff asserts claims under Section 1981 and Section 1983 in his Complaint, he fails to offer argument or cite to evidence in response to Defendant's summary judgment argument against them. The Court therefore deems these claims to be abandoned. *See Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992) (holding that arguments not before the district court in a summary judgment response are waived on appeal);

*Frank C. Bailey Enters., Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978) (discussing abandonment and waiver). In any event, the summary judgment test for a *prima facie* discrimination claim under Section 1981 and Section 1983 is the same as the test for a *prima facie* discrimination claim under Title VII. *Patel v. Midland Memorial Hosp. and Med. Ctr.,* 298 F.3d 333, 342 (5th Cir. 2002), *cert. denied*, 537 U.S. 1108 (2003); *Pratt v. City of Houston*, 247 F.3d 601, 605 n. 1 (5th Cir. 2001). Plaintiff's causes of action under those statutes are thus dismissed for the reasons given in the Title VII analysis above.

**C.     Hostile Work Environment**

Plaintiff next argues his cause of action under Title VII for a hostile work environment based on racial discrimination. To prevail on a claim for racially hostile work environment, Plaintiff must show (1) racially discriminatory intimidation, ridicule, and insults that are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment. *Walker v. Thompson*, 214 F.3d at 625; see *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 21 (1993). For this cause of action, only harassment motivated by racial *animus* is actionable. *Daniels v. BASF Corp.,* 270 F. Supp. 2d 847, 855 (S.D. Tex. 2003) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace . . ..")). The circumstances to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. at 23. A racially hostile working environment can be described as one "so heavily polluted with discrimination as to destroy completely the emotional and

9

psychological stability of minority group workers." *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924 (5th Cir. 1982).

In this case, Plaintiff alleges the following list of grievances.[2] First, related to Plaintiff's two-day suspension in 2004 is an inference that the investigating officers accepted the word of white witnesses over the word of African-America witnesses supporting Plaintiff's version of events. Additionally, Plaintiff in 2001 soon after his step-son's trial received a package of what appeared to be feces, with a note proclaiming "Watt You Ain't Shit." He was at one time asked by another African-American officer not to perform a certain type of handshake because it was unprofessional. His mode of dress and music preferences were criticized on a handful of occasions as being "hip-hop." He was "clicked" on the radio. That is to say, when he began speaking on the radio, his fellow officers began clicking their own radios so that he could not be heard. Although Plaintiff subjectively attributes the "clicking" to his race, he also provides evidence that it was directly related to his "southern Louisiana" accent. It is undisputed that after Plaintiff complained of the clicking, the offending officers were told to desist, and the incidents decreased significantly. In a related allegation Plaintiff says he was told by some officers that other officers thought he sounded "country" or "ethnic."

Plaintiff further complains that once in 2003 he was not allowed to go home to calm down after witnessing an unoccupied police car explode, while a Caucasian officer was allowed to do so.

---

[2] Although some of these events happened outside the limitations period, the Court includes them here, including the denials of overtime, as part of the ongoing pattern of events forming an alleged hostile working environment. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105-06 (2002). Although the overtime denials are not sufficiently related to the two-day suspension to establish an ongoing adverse employment action, both of those allegations can properly be included when looking at the working environment as a whole. *See id.*

The Caucasian officer, however, was the undisputed former occupant of the vehicle. Plaintiff reiterates denial of thirty minutes of overtime on two occasions while a Caucasian officer received overtime, but on different occasions. He says that a Caucasian officer tried to block and then to remove him from the Northwest ICP Unit. It is undisputed, however, that Plaintiff was never removed from that unit and remains there to date. Plaintiff claims to have been reprimanded for calling other officers "dog." He complains that he was made to ride alone in dangerous areas designated for two-man patrols. Plaintiff claims that he submitted one report that was rejected as full of errors, but that was later accepted when submitted unchanged over a white officer's signature. In addition, Plaintiff complains that in November 2003 he was characterized as an unqualified police officer by a "racially biased" newspaper, the *Dallas Morning News*. Plf's Brf. at 6. Although he alleges that the white officers in the Department had a hand in the publication of that article, such speculation (supported only by a *res ipsa* argument) is not substantiated by any actual evidence.

On the basis of this list of acts as a whole, Plaintiff presents a persuasive case that he is not universally well-regarded in the Department. The leap from that situation to a racially abusive working environment, however, is something no reasonable juror could achieve on these facts. Plaintiff's subjective belief, no matter how heartfelt, that he was discriminated against is not sufficient to sustain this case. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000); *Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991). Occurring sporadically over a six-year employment period, the acts of which Plaintiff complains are in general no more than "the ordinary tribulations of the workplace" for which relief is not available in the federal courts. *Daniels v. BASF Corp.*, 270 F. Supp. 2d at 854-55 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

11

Furthermore, and more importantly, the Court cannot reasonably infer from most of these incidents a racial *animus*. *See id.* (finding no Title VII hostile environment because of an absence of connection to race). Several of the isolated instances with nominal racial overtones (*e.g.*, the handshake and hip-hop music) are so trivial as to have negligible impact on Plaintiff and his ability to perform his job. For more serious complaints, such as having to ride alone on a dangerous two-man patrol, Plaintiff cites to no evidence other than his own conjecture connecting that staffing decision to race. Indeed, Plaintiff's reasoning on this and other issues is patently circular. Caucasian officer Lieutenant King is racially biased, Plaintiff alleges, because he shorted Plaintiff's overtime and rejected his report; and the reason he did so, Plaintiff continues, is because he is racially biased. *See* Plf's Brf at 5.

Falling back on what is a *leitmotif* throughout his pleadings, Plaintiff argues that the Dallas Police Department is controlled by certain white racist leaders of a private police association. Plaintiff provides no summary judgment evidence, however, tending to show any causal nexus between the association's activities and his misfortunes. The apparent thrust of his argument is, instead, that every negative or unfair event that occurs to him as an African-American is a product of racist control of the Department, and is thus racially hostile *per se*. The Court agrees that it would be a matter of public concern if a private, union-like association organized and governed along racial lines were to exercise control over a law-enforcement institution. In a proper case, the nature and sphere of influence of such an organization might well be a matter for a jury to decide. This, however, is not that case. Plaintiff's claim of a racially hostile work environment is simply too weak to survive summary judgment in this Circuit on the meager facts for which he is able to raise a genuine issue. Plaintiff's hostile work environment claim is dismissed.

**D.     Retaliation**

Plaintiff next alleges a cause of action for Title VII retaliation based on his filing of a grievance on March 10, 2004, against his Caucasian lieutenant approximately three months before he received the two-day suspension.[3] To state a *prima facie* claim for retaliation under Title VII, a complainant must show (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse employment action. *Zaffuto*, 308 F.3d at 492*; Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001).

In this case, Plaintiff's retaliation claim fails for three reasons. First, under the same analysis as for Plaintiff's Title VII discrimination claim, he cannot show an adverse employment action. *See Zaffuto*, 308 F.3d at 492-93 (defining an "adverse employment action" for purposes of a retaliation claim as an ultimate employment decision). Second, he offers no summary judgment evidence that he filed a Charge with the EEOC alleging retaliation and has thus failed to exhaust his administrative remedies. *See Bowers v. Potter*, 113 Fed. Appx. 610, *2 (5th Cir. 2004) (and cases cited therein); Def's Appx. at 101 (EEOC Charge alleging racial discrimination only). Third, he failed to respond to Defendant's motion for summary judgment on this issue, and the Court construes this failure as tacit abandonment of the claim. *See Skotak v. Tenneco Resins, Inc.,* 953 F.2d at 915-16. Plaintiff's retaliation claim is dismissed.

---

[3] The Court assumes that the grievance is the constitutionally protected activity asserted. Plaintiff cannot base the retaliation claim on the sole other possibility -- his filing of a Charge of Discrimination with the EEOC -- because the allegedly retaliatory suspension, issued on or about June 30, 2004, occurred before the EEOC Charge was filed September 14, 2004.

13

### E. Due Process

In his Amended Complaint, Plaintiff alleges denial of due process in connection with the internal investigation that resulted in his two-day suspension. Assuming process was due under these circumstances, the process required was notice of the allegations and an opportunity to respond. *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 547-48 (1985). It is undisputed that Plaintiff received notice of the investigation and charges; that he filed a written response; and that he availed himself of the appeal procedure, which upheld the suspension. The requirements of procedural due process were therefore fully met.

To the extent that Plaintiff is alleging violation of substantive due process on the basis of a dubious property right in two days' pay withheld under the suspension, no reasonable jury could find the fully documented investigation and appeal process to approach the "arbitrary or capricious" standard required for this claim. *See Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir.), *cert. denied*, 522 U.S. 1016 (1997); *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). Moreover, Plaintiff's failure to respond to Defendant's motion for summary judgment on the issue of due process is construed as abandonment of the claim(s). *See Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16.

### F. Declaratory Judgment

Because Plaintiff has no remaining causes of action against Defendant, his request for Declaratory Judgment is denied.

## IV.  CONCLUSION

For the reasons given above, Defendant's motion for summary judgment is **GRANTED** in all things.  Defendant's Motion to Strike Summary Judgment Evidence is rendered **MOOT** by this order.  A Final Judgment will issue separately.

SO ORDERED.

DATED: December 28, 2005.

*[signature]*
BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS